IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**SUSAN PICKLE**                                                            **PLAINTIFF**

**v.**                                                          **CIVIL ACTION NO.: 4:24-cv-78-JMV**

**COMMISSIONER OF SOCIAL SECURITY**                            **DEFENDANT**

**ORDER**

On August 27, 2021, Plaintiff filed an application for period of disability and disability insurance benefits, alleging disability beginning May 17, 2021. The application was denied both initially and on reconsideration. Thereafter, Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"), and on June 14, 2023, the ALJ held a hearing. A supplemental telephonic hearing was held on December 1, 2023. On February 27, 2024, the ALJ issued an unfavorable decision.

Subsequently, Plaintiff requested review from the Appeals Council. On June 27, 2024, the Appeals Council declined review, thus making the ALJ's decision the final decision of the Commissioner of Social Security. For the reasons that follow, the undersigned finds that the ALJ's decision shall be AFFIRMED.

**The Case Below**

Susan Allison Pickle, the Plaintiff and claimant herein, was born on September 26, 1975, and she was a younger individual, on the alleged onset date. Plaintiff has at least a high school education. (Tr 22). Plaintiff has past relevant work as a teacher assistant and office manager. (Tr 21). The ALJ ruled that Plaintiff was unable to perform her past relevant work. The ALJ opined that Plaintiff had the following severe impairments: type 1 diabetes mellitus, chronic ischemic

heart disease, respiratory disorder, peripheral neuropathy, Dupuytren's contracture left long finger small and ring fingers, anxiety, and depression. (Tr 12).

At step one, the ALJ found that Plaintiff had not engaged in SGA since her alleged disability onset date. At step two, the ALJ found Plaintiff has the following severe impairments: type 1 diabetes mellitus; chronic ischemic heart disease; respiratory disorder; peripheral neuropathy; Dupuytren's contracture of the left long, small, and ring fingers; anxiety; and depression. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. The ALJ determined that Plaintiff has the residual functional capacity to a modified range of sedentary work (Tr 16). At step four, the ALJ found that Plaintiff is unable to perform any past relevant work (Tr 21). However, at step five, the ALJ determined that Plaintiff can perform other jobs that exist in significant numbers in the national economy, such as food and beverage order clerk (DOT 209.567-014, existing in numbers of 176,850 jobs in the national economy), charge account clerk (DOT 205.567-014, existing in numbers of 186,030 jobs in the national economy), and information clerk 237.367-046, existing in numbers of 150,590 jobs in the national economy) (Tr 22-23). Accordingly, the ALJ concluded that Plaintiff was not disabled from May 17, 2021, through the date of the ALJ's decision (Tr 22-23).

**Standard of Review, Law, and Analysis**

It is long established that this Court's review of the Commissioner's final decision that Plaintiff was not disabled is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). When substantial

evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court explained:

> The phrase substantial evidence is a term of art used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence…is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations and internal quotations and brackets omitted).

In applying the substantial evidence standard, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The claimant has the burden of proof at the first four steps of the sequential evaluation process. *See Greenspan*, 38 F.3d at 236. At step five, the Commissioner has the burden to produce evidence about the existence of work in the national economy. *See* 20 C.F.R. § 404.1512(b)(3). Once the Commissioner shows that a claimant's RFC and vocational profile would allow performing a significant number of jobs in the national economy, the burden shifts to the claimant to rebut this finding. *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

As relevant to this case, a severe impairment is an impairment that significantly limits a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. § 404.1520(c); 20

C.F.R. § 404.1521(a) (defining a non-severe impairment). A severe impairment must last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1505(a); 404.1509; 404.1520(c); *Barnhart v. Walton*, 535 U.S. 212, 217 (2002). Because an individual is diagnosed with a condition does not mean that the condition would cause limitations that would warrant a finding of a severe impairment. 20 C.F.R. §§ 404.1520(c); 404.1521(a); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis [of a condition], of course, says nothing about the severity of the condition.").

**Issues on Appeal**

Plaintiff argues generally that the ALJ engaged in "picking and choosing" the record evidence that supported his position instead of considering all of the record evidence in violation of *Loza v. Apfel*, 219 F.2d 378 (5th Cir. 2000). As is detailed more fully below, the undersigned finds that this argument lacks merit.

1. Whether the ALJ properly considered Plaintiff's migraines when he evaluated Plaintiff's residual functional capacity.

    The ALJ found in his opinion that Plaintiff had the following RFC:

    Plaintiff can perform sedentary work as defined in 20 C.F.R. § 404.1567(b), except that she can never climb ladders, ropes, or scaffolds; can occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl; can frequently handle, finger, and feel; must avoid concentrated exposure to vibration, loud noise, bright or strobing lights, dust, odors, gases, fumes, poorly ventilated areas, other pulmonary irritants, unprotected heights, and hazardous moving machinery; and can sustain concentration, persistence, and pace for two-hour blocks of time

(Tr 16).

Plaintiff argues that the ALJ erred in his assessment of her migraines and/or headaches. In the hearing decision, the ALJ stated, in relevant part, with respect to this impairment:

4

> The record shows the claimant's reports of severe headaches are primarily limited to the period of January through June 2022, and therefore such is not shown present for any consecutive twelve month period. When seen by a neurologist in April 2022 the claimant reported four to five excruciating headaches per week. However, two months later, in June 2022, the claimant reported significant decrease in the frequency of her headaches per month, as opposed to the 16 to 20 per month previously reported. She also reported Ubrelvy had worked well but her insurance had denied coverage for the medication (Exhibit 24F/1-4). Although the claimant is shown to have complained of headaches on some other occasions, such as May 2023 (Exhibit 22F/5), the claimant is not shown to have alleged the frequency, duration, or intensity of headaches as she had during the first half of 2022, indicating improvement in her condition after having received neurological treatment and when following treatment recommendations and medication regimen.

(Tr 13).

The ALJ acknowledged that the Plaintiff testified that she suffered from headaches in his opinion, stating that "[w]ithin her testimony at her hearings, the claimant's allegations included frequent headaches." (Tr 17).

At the first hearing, on June 14, 2023, when the ALJ asked the Plaintiff whether her headaches have been resolved or if they are still an ongoing impairment, the Plaintiff stated:

> They still are. Some days are better than others. Like they were before I started the medication, but before, they were, I mean, pretty bad where I couldn't -- the light sensitivity. I couldn't have the lights on. Noise would affect my headaches where I couldn't hardly function till I would get nauseated and throw up because my head could be hurting so bad.

(Tr 63).

Plaintiff testified at her second hearing on December 1, 2023, the testimony was as follows:

Q: Okay and the record also discusses headaches. Are you going to a neurologist for those impairments? How do those affect you? Are your migraines contribute [sic] to your inability to work?

5

      A:      They do. When I had one of migraines come on I can't -- sensitivity to light, noise. Yeah, I have to take the medicine which it makes you sleepy. Any kind of noise or light – I don't -- I can't the sensitivity to the light make it worse. So, it has to be quiet and [INAUDIBLE].

      Q: Okay and you have a -- what is the frequency of that? How often are you having those?

      A: I have that to three to five times a month.

(Tr 42).

Nonetheless, the ALJ found that "the claimant's treatment history and the objective findings therein fail to provide support for the extend of limitation alleged by the claimant." *Id*. Instead, the ALJ noted that "the record shows the claimant's reports of severe headaches are primarily limited to the period of January through June 2022, and therefore such is not shown present for any consecutive twelve month period." *Id*.

The medical evidence in the record with regard to Plaintiff's headaches reveals that in January 2022, Plaintiff presented with a "moderate" headache that had started the day before (Tr 1396). In April 2022, Plaintiff saw Malcolm Roland, M.D, a physician with Oxford Neurology, and reported four to five headaches per week (Tr 13, 1470). For migraine prevention, Dr. Roland recommended that Plaintiff stop Lexapro; start duloxetine; start magnesium and riboflavin or MigreLief; and increase metoprolol (Tr 1471). For abortive or "knockout" treatment of migraines, Dr. Roland recommended Ubrelvy (Tr 1471). As the ALJ noted, "in June 2022, [Plaintiff] reported significant decrease in the frequency of her headaches. Specifically, [Plaintiff] reported experiencing about five headaches per month, as opposed to the 16 to 20 per month previously reported" (Tr 13, 1467). After June 2022, the record contains no further records from Oxford Neurology.

On May 24, 2023, a record from Quick Care Clinic, LLC reveals that Plaintiff complained of "headaches, numbness, tingling." (Tr 1444). Plaintiff was also seen by Dr. Elizabeth Mize at Oxford OBGYN on October 6, 2023, for an annual visit, and Dr. Mize noted "migraines-Cymbalta." (Tr 1503). However, the ALJ found that although Plaintiff complained of headaches in May 2023, she "is not shown to have alleged the frequency, duration, or intensity of headaches as she had during the first half of 2022." (Tr 13, 1444). Thus, the ALJ found that this indicated "improvement in her condition after having received neurological treatment and when following treatment recommendations and medication regimen." (Tr 13). Plaintiff's treatment records show no reports of headache on September 20, 2022 (Diabetes and Endocrine Center of Mississippi), February 27, 2023 (Diabetes and Endocrine Center of Mississippi), or May 1, 2023 (Quick Care Clinic, LLC) (Tr 1405-1406, 1410, 1451-1452). Plaintiff did not report headaches as an ongoing problem at the consultative examination of July 2023 ("no headaches or palpitations"), and in her adult disability report, she did not claim that headaches limited her ability to work (Tr 16, 270, 1487-1488).

Plaintiff argues that she has "severe and debilitating migraines and/or headaches multiple days per month which would render her off-task, unable to concentrate, or absent during these days." (Doc. 13 at 5). In support of this assertion, Plaintiff cites to *Wiltz v. Barnhart*, wherein the District Court for the Western District of Louisiana held that:

> [I]n cases involving complaints of disabling pain due to migraine headaches, courts look to other objective medical signs to determine whether the claimant's complaints are consistent with the existence of disabling migraine pain, including whether the claimant's migraines are accompanied by drowsiness, dizziness, nausea, vomiting, and blurred vision, whether the claimant has been prescribed medication for migraines and the associated symptoms of nausea and vomiting, whether Plaintiff is sensitive to light or sound, whether the claimant has received continuing and regular treatment for migraines-including outpatient and emergency treatment and whether the claimant's symptoms are consistent with those of migraine headaches."

7

474 F. Supp. 2d 524 (W.D. La. 2006).

Plaintiff notes that the *Wiltz* standard was adopted in this District in *Quiney v. Commissioner*, Civil Action No. 3:17-cv-94-RP (N.D. Miss. 2018). In *Quiney*, U.S. Magistrate Judge Roy Percy found that while the ALJ "discounted Plaintiff's complaints of headaches because no MRI or CT scans have evidenced any underlying pathology that could cause chronic headaches, . . . most if not all of [the] other objective medical signs are thoroughly documented in the record in this case, and the Court finds the ALJ's failure to consider them is reversible error." *Quiney*, (Doc. 20) at 2.

In contrast, this case more closely resembles *McCray v. Saul*, 2021 WL 933859 (N.D. Miss. Mar. 11, 2021), *aff'd sub nom. McCray v. Kijakazi*, No. 21-60401, 2022 WL 301544 (5th Cir. Feb. 1, 2022). In *McCray*, U.S. Magistrate Judge David A. Sanders recited the *Wiltz* standard, along with the list of "other objective medical signs" included above. However, Judge Sanders found:

> While the plaintiff relies on *Wiltz*, she has failed to identify evidence of any of the "other objective medical signs" which demonstrate disabling migraines. Rather, the "illustrations of the severity of Plaintiff's migraines and/or headaches" included in the plaintiff's brief document her complaints of headaches generally but show no related symptoms, disabling migraine pain, or continued and regular treatment.

*Id.* at *3.

Such is the case here. As discussed *supra*, there is documentation of complaints of headaches from January 10, 2022, April 14, 2022, June 27, 2022, and May 24, 2023; however, there is no complaint of headaches or "other objective medical signs" from the treatment records on September 20, 2022, February 27, 2023, or May 1, 2023, from the July 2023 CE, or in Plaintiff's adult disability report.

The Commissioner correctly notes that the proper focus in a disability determination is not on the mere presence of a condition, but on the extent to which the claimant has limitations that

8

prevent her from maintaining regular employment. *See Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992). The claimant bears the burden of proving that she is so functionally impaired that she cannot engage in any form of substantial gainful activity. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983).

Here, the ALJ assessed Plaintiff's headaches, and found that they did not produce disabling limitations based upon the objective evidence before him (Tr 13, 17). The undersigned is not permitted to reweigh the evidence and does not find reversible error on this issue.

2. Whether the ALJ properly considered the opinion of Laura Flippin, FNP-C, a nurse practitioner, when he evaluated Plaintiff's residual functional capacity.

Laura Flippin, FNP-C, a nurse practitioner completed a medical source statement on Plaintiff's behalf in May 2023 (Tr 1440-1443), and Plaintiff argues that the ALJ improperly considered Ms. Flippin's opinion.

This is not a case where the ALJ overlooked an opinion; the ALJ carefully analyzed the evidence from Ms. Flippin in his opinion (Tr 19-20). The ALJ also articulated how persuasive he found Ms. Flippin's opinion to be, in accordance with 20 C.F.R. § 404.1520c (Tr 19-20). Plaintiff argues that "Ms. Flippin's opinion is actually the only medical opinion that is supported and consistent with the evidence of record." (Doc. 13 at 7). However, the ALJ's residual functional capacity finding need not directly correspond to any individual medical opinion. As the Fifth Circuit has recognized, an ALJ is not required to adopt a specific clinician's assessment but is instead responsible for interpreting the medical evidence to determine a claimant's capacity for work. *See Miller v. Kijakazi*, 2023 WL 234773 at *4 (5th Cir. Jan. 18, 2023); *Webster v. Kijakazi*, 19 F.4th 715, 719-720 (5th Cir. 2021). The undersigned finds that substantial evidence supports the Plaintiff's RFC.

**Conclusion**

In conclusion, Plaintiff has cited no objective evidence that she has functional limitations that exceed the limitations that the ALJ set forth in his modified sedentary RFC determination. The Court is not permitted to reweigh the evidence; rather, it must determine only whether substantial evidence supports the ALJ's findings. Accordingly, I find that the ALJ's opinion is supported by substantial evidence, and the ALJ's decision shall be and is hereby AFFIRMED.

**SO ORDERED** this, the 1st day of May, 2025.

/s/ Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**